IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC | § | |
| as Broadcast Licensee of the May 17, 2014 | § | |
| Bellator 120 Fight Program, | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:17-cv-01310-M |
| v. | § | |
| | § | |
| MICKEY'S SPORTS BAR AND GRILL | § | |
| LLC, individually and d/b/a MICKEY'S | § | |
| SPORTS BAR AND GRILL; and | § | |
| RICARDO MORRIS, individually and | § | |
| d/b/a MICKEY'S SPORTS BAR AND | § | |
| GRILL, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Default Judgment (ECF No. 11).   For the

reasons stated below, the Motion is **GRANTED**.

### I.      Background

This is an anti-piracy case brought under the Federal Communications Act of 1934

("FCA"), as amended.   47 U.S.C. §§ 533, 605.   Plaintiff is in the business of marketing and

licensing commercial exhibitions of pay-per-view closed-circuit prizefight events.   (App. at 6.).

Plaintiff purchased exclusive distribution and licensing rights to the *Bellator 120: Rampage v.*

*King Mo Fight Program* that was broadcast on May 17, 2014 (the "Event").   (*Id.* at 13.).

Through this agreement, Plaintiff had the exclusive right to sell the commercial distribution

rights to the Event to commercial establishments, including bars, clubs, arenas, restaurants and

the like, throughout Texas.   (Orig. Compl. at ¶ 3; Mot. at ¶ 6.).   Plaintiff claims that Defendants

used an unauthorized decoder to illegally obtain access to the Event.   (Mot. at ¶ 5.).   Plaintiff

hired Ana Saldana, an investigator, to visit Mickey's Sports Bar and Grill ("Mickey's") on May 17, 2014, where she witnessed Defendants broadcast the Event on thirteen televisions in view of at least 37 customers.   (*Id.* at ¶ 7; App. at 16-17.).

On May 16, 2017, Plaintiff filed this lawsuit against Mickey's and its owner, Ricardo Morris ("Morris") (collectively, "Defendants").   Plaintiff asserts that Defendants violated the FCA and seeks statutory damages in the amount of $10,000, additional damages in the amount of $50,000, and attorney's fees of one third or $1,000 based on an hourly rate of $250 per hour. (Pl. Orig. Compl. at p. 5; Mot. at 10.).   Defendant Morris was served on June 20, 2017, and Mickey's was served on July 31, 2017.   Neither Defendant filed an answer or otherwise responded to the Complaint.   On December 6, 2017, Plaintiff filed its Motion for Default Judgment (ECF No. 11), and the Clerk of the Court entered an Entry of Default (ECF No. 12), on the same day.

## II.    Legal Standard

Under Rule 55, courts may enter a default judgment against a defendant who has failed to plead or otherwise defend.   Fed. R. Civ. P. 55(a), (b).   "Default judgment is proper only if the well-pleaded factual allegations in the [] Complaint establish a valid cause of action."   *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381 (W.D. Tex. 2008); *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("There must be a sufficient basis in the pleadings for the judgment.").   A defendant, "by his default, admits the plaintiff's well-pleaded allegations of fact."   *Nishimatsu Const. Co.,* 515 F.2d at 1206.

The Fifth Circuit employs the factors in *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998), when considering a motion for default judgment.   Those factors are: (1) whether

material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Id.*

## III. Analysis

The unauthorized reception or interception of either cable or satellite transmissions violates either 47 U.S.C. § 553 or § 605. Section 605(a) prohibits the unauthorized receipt and use of radio communications for one's "own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Section 553 prohibits the unauthorized interception or reception or the assistance in intercepting or receiving any communications service offered over a cable system. 47 U.S.C. § 553(a)(1). Here, the Defendants' illegal interception and subsequent broadcast of the Event violates both §§ 553 and 605.

Considering the six factors set out in *Lindsey*, the Court finds they weigh in favor of granting a default judgment. First, Defendants did not file an answer or otherwise respond to Plaintiff's Complaint. As a result, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893. Second, Defendants' "failure to respond to Plaintiff's Complaint threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests in pursuing its rights afforded by law." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.). Third, the grounds for default have been clearly established. Defendants were served over five months ago and have not responded to Plaintiff's Complaint nor sought relief or provided an explanation for their delay. Fourth, there is no evidence before the Court to indicate the Defendants' silence is the result of a good faith mistake or excusable neglect. Fifth, Plaintiff seeks only the relief to which

it is entitled under the law, and Defendants' failure to respond during the last five months "mitigate[es] the harshness of a default judgment against them." *Id.* Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *Id.* Therefore, the Court concludes that default judgment is procedurally proper.

The Court finds that Defendants have not answered or otherwise defended in this action, and Defendants are not minors, incompetent, or in the military.[1] Fed. R. Civ. P. 55(a), (b)(1). Substantively, Plaintiff's Complaint establishes that Plaintiff held an exclusive license to market and sublicense the Event, and the Event was legally available only through a sublicense granted by Plaintiff. (Pl. Orig. Comp. at ¶¶ 6, 8.) The Complaint further establishes that the transmission of the Event was electronically coded or scrambled, and not intended for the use of the general public. (*Id.* at ¶ 9.). Thus, to broadcast the Event, Defendants had to decode the transmission with unauthorized decoder equipment. (*Id.*; Mot. at ¶ 5.).

Plaintiff's supporting evidence includes a sworn affidavit from Thomas P. Riley to support Plaintiff's claims of Defendants' violations of § 553 and § 605. (App. at 5-11.). Riley avows that Plaintiff did not provide decoding or satellite equipment necessary for Defendants to receive the signal to broadcast the Event. (*Id.* at 8.). Plaintiff also provides an affidavit from Plaintiff's President stating Plaintiff held exclusive distribution rights to the Event (*Id.* at 13-14.), and an affidavit from Saldana describing her visit to Mickey's on May 17, 2014. (*Id.* at 16-17.). The Court accepts the well-pleaded facts in Plaintiff's Complaint and supporting evidence as true, to establish its claim for relief under the FCA.

---

[1] See Morris' Soldiers and Sailors Servicemembers Status Report and Accompanying Affidavit. (App. at 50-54.).

### a. Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability.   But it does not establish the amount of damages."   *J & J Sports Prods., Inc. v. Tharpe*, No. 3:11-CV-02929-L, 2012 WL 1969342, at *1 (N.D. Tex. May 31, 2012) (Lindsay, J.).   Furthermore, the damages may "be entered without a hearing" when "the amount claimed is a liquidated sum or one capable of mathematical calculation."   *United Artis corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).   Here, Plaintiff's pleadings and evidence allow the Court to determine the damages, with certainty, without a hearing.

### i. Statutory damages.

Plaintiff seeks the maximum statutory damage award of $10,000 under § 605(e)(3)(C)(i)(II).   In addition to lost licensing fee due to Defendants' illegal actions, Plaintiff argues that "it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of Defendants' unlawful actions."   (Mot. at ¶ 10.).   Plaintiff further argues that it should receive additional compensation because it "has been deprived of the 'value, benefits and profits derived' from the unauthorized broadcast" and deprived of "business investment, business opportunities and goodwill."   (*Id.* at ¶ 11.).   Plaintiff further argues that Defendants' actions have "eroded the base of Plaintiff's customers."   (App. at 9, ¶ 13.).

The Court considers various factors in determining the statutory damages, including the number of patrons in the establishment during the unauthorized broadcast and the licensing fee. This Court, consistent with other courts, has awarded $5,000 of statutory damages for similar conduct and licensing fees.   *Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No. 3:16-CV-01889-M, 2017 WL 373478, at *4 (N.D. Tex. Jan. 26, 2017) (Lynn, C.J.) (awarding base

statutory damages of $5,000 when the licensing fee would have been $1,300); (*Entm't by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (awarding base statutory damages of $5,000 when the licensing fee would have been $1,500); *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (Boyle, J.) (awarding base statutory damages of $5,000 when the licensing fee would have been $1,100-$1,200); *J & J Sports Prods., Inc. v. Beck*, No. L-013-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (awarding base statutory damages of $5,000 when the licensing fee would have been $1,200-$1,600).

Plaintiff's evidence indicates that a sublicense to broadcast the Event at Mickey's, an establishment with a maximum occupancy of 200[2] persons, would have cost $1,400. (App. at 21.). In light of Plaintiff's evidence, the Court finds that an award in the amount $5,000 for base statutory damages is reasonable.

### ii. Additional damages.

Additional damages are available to deter pirating. *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."); *Tharpe*, 2012 WL 1969342, at *2 ("To deter pirating of cable and satellite broadcasts, courts have applied multipliers of three to eight times the statutory damages

---

[2] Saldana states that the maximum capacity of Mickey's is approximately 120 people. (App. at 17.) Riley states the maximum fire code occupancy is 200 and correlates this number to a sublicense fee of $1,400. (App. at 7.).

as additional damages.") The court, in its discretion, may increase the damages by an amount of not more than $100,000 for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C)(ii).

Here, Plaintiff claims that Defendants' actions were willful and seeks $50,000, five times the statutory damages award request. (Pl. Orig. Compl. at 5.). Plaintiff claims that by default, Defendants admitted to an "intentional exhibition of the Event for financial gain." (Mot. at ¶ 16.). Plaintiff further argues that the broadcast could not have been "innocently" accessed, therefore Defendants had to act "specifically and willfully" to intercept the transmission. (*Id.*; Pl. Orig. Compl. at ¶ 12.).

The Court concludes that Defendants acted willfully. Although Plaintiff states that no cover charge was required to enter the establishment and only 37 patrons were counted by the investigator, Plaintiff argues that the Court should consider circumstances when a Defendant is a repeat offender. (Mot. at ¶ 19; App. at 56-60.). Plaintiff includes evidence of two final default judgments against Defendants for substantially the same violations in this district.[3] (App. at 56-60.). Thus, the Court finds that the Defendants are repeat offenders and finds that additional damages are warranted in the amount of $25,000, which reflects five times the statutory damages award.

### iii. Attorney's fees

Finally, under § 605, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

---

[3] *J & J Sports Productions, Inc. v. Mickey's Sports Bar and Grill LLC et al.*, No. 3:17-cv-01123-N (adjudicated Nov. 9, 2017) and *J & J Sports Productions, Inc. v. Mickey's Sports Bar and Grill LLC et al.*, No. 3:17-cv-01486-D (adjudicated Oct. 3, 2017).

Through an affidavit, Plaintiff averred that its attorney's fees, at a rate of $250.00 per hour, amounted to $1,000. The Court finds this amount fair and reasonable and grants the same.

### IV. Conclusion

For the forgoing reasons, Plaintiff's Motion for Default Judgement is **GRANTED**. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED:

1. That Plaintiff recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $5,000.00.

2. That Plaintiff recover additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $25,000.00.

3. That Plaintiff recover attorney's fees from Defendants, jointly and severally, in the amount of $1,000.00; along with attorney's fees for post-trial and appellate services.

4. That Plaintiff recover the following conditional awards of attorney's fees from Defendants, jointly and severally, in the following circumstances:

   a) Ten Thousand Dollars ($10,000.00) in the event a defendant a files a motion to vacate, Rule 60 motion, motion for new trial, motion for reconsideration or other post-judgment, pre-appeal motion that does not result in a reversal of the Judgment obtained in this action;

   b) Twenty-Five Thousand Dollars ($25,000.00) in the event a defendant files an appeal to the Fifth Circuit Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

   c) Five Thousand Dollars ($5,000.00) in the event a defendant files a motion for rehearing or reconsideration in the Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

   d) Twenty-Five Thousand Dollars ($25,000.00) for making and/or responding to a petition for certiorari to the U.S. Supreme Court that does not result in a reversal of the Judgment obtained in this action;

e) Seventy-Five Thousand Dollars ($75,000.00) for an appeal to the United States Supreme Court in the event a petition for certiorari review is granted and does not result in a reversal of the Judgment obtained in this action; and

f) For collection of the Judgment, Two Thousand Five Hundred Dollars ($2,500.00) each time Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment or other post-judgment writ.

5.     That Court awards Plaintiff court costs and post-judgment interest on the amounts awarded herein at an annual rate of 1.70% from the date of this Judgment until paid.

6.     All writs and process for the enforcement and collection of this Judgment may issue as necessary. In connection with any Writ of Execution in this case, the Court directs the United States Marshals Service to use any means or forces reasonably necessary to satisfy this Judgment.

**SO ORDERED**.

December 21, 2017.

_____
BARBARA M. G. LYNN
CHIEF JUDGE